perform most of the labor involved in the litigation. If I felt that the Code, as it stands now, empowered me to grant a larger allowance, I should unhesitatingly do so, as the sum to which I feel myself to be limited is obviously too small in a case involving so much property as is involved here.

Ordered accordingly.

---

## In re CONKLIN.

(Supreme Court, Special Term, New York County. August 3, 1897.)

PROCEEDINGS IN AID OF EXECUTION—TRANSFER.

Proceedings for the examination of a judgment debtor, in aid of execution, residing in that part of Westchester county which was annexed to New York City under Laws 1895, c. 934, will be transferred to the Second department, though the order for the examination was made by a justice of the supreme court, who failed to make it returnable to the Second department.

Proceeding against one Conklin in aid of execution. Transferred to Second department.

SMYTH, J. It seems to be settled by the court of appeals in the case of People v. Board of Sup'rs of Westchester Co., 147 N. Y. 1, 41 N. E. 563, and by the appellate division, Second department, in Zeimer v. Rafferty (Sup.) 46 N. Y. Supp. 345, that that part of the county of Westchester which was annexed to the city of New York, under chapter 934 of the laws of 1895, still remains, for all judicial purposes, the county of Westchester. It also appears that at the trial of the recovery of the judgment herein, and the issuing of the execution thereon, the judgment debtor was, and is now, a resident of said county. The order for her examination should therefore have been made returnable before a justice of this court in the Second department. Any justice of this court had jurisdiction to make the order in this matter; and when it is made to appear, as it has been, that the order in question should have been made returnable before a justice of the Second department, and not before me, an order will be made transferring the proceeding herein to the Second department for further proceeding thereupon. Settle order on notice.

---

## SPRAGUE NAT. BANK v. ERIE R. CO.

(Supreme Court, Appellate Division, Second Department. April 25, 1899.)

1. TRESPASS QUARE CLAUSUM FREGIT—VENUE.

An action of trespass quare clausum fregit cannot be maintained in one state in reference to lands situated in another.

2. ABATEMENT—JURISDICTION—WAIVER.

Where an action is brought in one state for damages for conversion of buildings in another state, and the evidence establishes only such an invasion of plaintiff's rights as would warrant an action of trespass quare clausum fregit, defendant does not waive his right to object to the juris

diction of the court to try the action by failing to do so until after judg-ment against him.

Appeal from special term, Kings county.

Action by the Sprague National Bank against the Erie Railroad Company. From a judgment in favor of plaintiff, entered on a decision of a justice, a jury having been waived, defendant appeals. Reversed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

F. B. Jennings (Howard Van Sinderen, on the brief), for appellant.
Edward M. Grout, for respondent.

WILLARD BARTLETT, J.   This is an action to recover damages for the alleged conversion of two buildings situated upon the premises which were the subject of a lease considered by this court in a previous litigation between the same parties.   Sprague Nat. Bank v. Erie R. Co., 22 App. Div. 526, 48 N. Y. Supp. 65.   The premises are situated at Jersey City, in the state of New Jersey.   In that case the plaintiff, as the transferee of the rights of the lessees, sought to recover damages against the defendant for a breach of the covenant of quiet enjoyment contained in the lease.   It appeared, however, that the defendant had acquired the property of the lessor upon a sale in foreclosure under a mortgage executed by the lessor prior to the letting; and we decided that the action could not be maintained, because the purchaser took title from the time of the mortgage, and there was no privity of contract or estate between the mortgagee and lessee, or between the lessee and purchaser.   After stating this conclusion, Mr. Justice Bradley, who wrote the opinion, added this observation: "So far as relates to the buildings put upon the premises by the lessees for the purposes of trade and business, a different question is presented. They were not within the grant of the mortgage, and the denial by the defendant of the right of the plaintiff to remove them was properly the subject of action for the recovery of damages."   The present suit is based upon an alleged conversion by the defendant of two of the buildings to which Mr. Justice Bradley thus referred.   The charge in the complaint is that on or about December 1, 1895, the defendant converted the said buildings to its own use, to the plaintiff's damage in the sum of $20,000, and the learned trial judge has found that "on November 30 or December 1, 1895, the defendant wrongfully entered upon the said premises without plaintiff's consent, and took possession thereof and of the said buildings, and held the same and converted the said buildings to its own use."   It will be noticed that Mr. Justice Bradley spoke of the denial by defendant of the right of the plaintiff to remove the buildings as being properly a subject of action for the recovery of damages.   I fail to find in the present record anything which amounts to proof of such a denial, or anything sufficient to sustain a finding of conversion.   It is true that the defendant has asserted its right to the possession of the land, and has actually taken possession of the same; but the evidence does not disclose any act on the part of its officers or agents except such as were appropriate to

the enforcement of its claim to the possession of the land. The defendant does not appear to have done anything which can fairly be construed as an attempt to exercise any dominion whatever over the buildings in question as personal property distinct from the land. Much less does the evidence show any denial of the right of the plaintiff to remove these structures. Under date of November 15, 1895, the Erie Railroad Company addressed a communication to the original lessees and to the plaintiff, notifying them of the transfer to that company of the franchises and property late of the New York, Lake Erie & Western Railroad Company, pursuant to the foreclosure sale under the judgment of the United States circuit court, and stating that the purchasers had elected not to assume the lease of the premises in question. In this communication it was further stated that it was intended that the Erie Railroad Company, on November 30, 1895, should enter into possession of its property under the decree and conveyances in foreclosure. In the language of this notification I can discover nothing from which to spell out a conversion of the buildings erected by the lessees, or a denial of their right or the right of their assignees to take such buildings away whenever they might so desire. Since the spring of 1896, or perhaps as early as December, 1895, the defendant has had a watchman on the premises, but he has been in a brick building; whereas this action relates only to the wooden buildings. In one of these wooden buildings lives another watchman, who was originally put in possession by a purchaser of the property from whom the plaintiff acquired it. He seems to have remained there continuously since 1891, but in what capacity, from the time when the Erie Railroad Company resumed possession of the land, does not appear. Assuming that he is there with the sanction of the defendant, there is not a syllable of testimony to indicate that he has ever done anything more than to act as a caretaker, or that he has ever in any wise assumed an attitude of hostility to any claim in respect to the buildings which might exist in behalf of the plaintiff.

The learned counsel for the appellant speaks of the plaintiff as having two distinct property rights upon the premises,—one partaking of the nature of realty, and consisting of the right to use the land, and the other being purely personal, and consisting of the right to use removable fixtures on the premises for a period of years, and then to remove them. It seems to me that the utmost that the plaintiff can be regarded as having proved in this case is an invasion of its right to use the land. The only appropriate remedy for such an invasion is an action of trespass quare clausum fregit, which cannot be maintained in New York in reference to land situated in New Jersey. Telegraph Co. v. Middleton, 80 N. Y. 408; Cragin v. Lovell, 88 N. Y. 258; Dodge v. Colby, 108 N. Y. 445, 15 N. E. 703. Here, as in the first of the cases cited, the acts alleged to constitute a conversion were so connected with the trespass as to form one and the same transaction, for which the plaintiff could have legal redress only by means of an action for trespass instituted in the state where the trespass was committed. This point is available to the appellant, although no objection to the jurisdiction of the court was made before the trial or at its outset. If the complaint had set out a cause of action for trespass

upon real property in New Jersey, and the defendant had submitted to the jurisdiction of the supreme court here without objecting to its authority to hear the cause, the resulting judgment might be held binding on the ground of waiver, as was the case in Sentenis v. Ladew, 140 N. Y. 463, 35 N. E. 650. But the complaint was a complaint for conversion only, and the defendant was not bound to anticipate that the proof in support of it would make out nothing more than a trespass upon realty in another state. Under such circumstances a failure to object to the jurisdiction did not constitute a waiver. For the foregoing reasons, I think that the judgment should be reversed.

Judgment reversed, and new trial granted, costs to abide the event. All concur.